AMERICAN HATTERS & FURRIERS CO. *v.* UNITED STATES [1]

[1] C. D. 31.

## United States Customs Court, Third Division

(Decided August 11, 1938)

Benjamin A. Levett (Meyer Ohlbaum of counsel) for the plaintiff.
Charles D. Lawrence, Acting Assistant Attorney General (Daniel G. McGrath, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J., not participating

CLINE, Judge: In this suit against the United States the plaintiff claims that the collector of customs at the port of New York assessed additional duty illegally at the rate of 10 per centum ad valorem under section 304 (b) of the Tariff Act of 1930 on the ground that the merchandise was not legally marked when imported.

It appears from the record that the importation consisted of raw rabbit skins, a product of Poland, and that the same were packed in old second-hand burlap bags which were dirty and some of them stained from the fat running out of the skins; that the skins were not required to be marked so as to indicate the country of origin thereof; and that no marks showing the country of origin appeared on the burlap bags, but cardboard tags, two inches by six inches in dimension, containing the words "Product of Poland", were fastened to the bags. The plaintiff's witness testified that the tags were securely tied on the bags through several loops of the burlap and that they were tied into the burlap and not to the tops of the bags. It was also shown that the business of the importer was buying rabbit skins and converting them into hatters' felt. These facts are shown by the following excerpts from the record:

Q. Please tell the court fully just how those bales were marked?—A. Those bales were marked with tags securely tied on through several loops of the burlap, and marked with, so far as I recollect, "Product of Poland."

\*      \*      \*      \*      \*      \*      \*

Q. Give testimony to these particular 54 burlap bags.—A. They are second-hand, dirty, burlap, usually, stained, caused by the out-running fat, occasionally, out of the skins.

\*      \*      \*      \*      \*      \*      \*

Q. Now will you tell us the business of the American Hatters & Furriers Co., Inc., if you know?—A. The general business of the American Hatters & Furriers is the buying of rabbit skins and converting same into hatter's fur.

Q. And the merchandise which they import, and particularly these 54 bales, are not for sale in the condition as imported?—A. No.

X Q. And what was the tag composed of, paper?—A. Paper cardboard.

X Q. Paper cardboard. And how was the tag attached to the burlap bag, by a string?—A. Yes, it was tied on through the loops of the burlap several times, tightly tied on.

X Q. How was it tied, with cord?—A. With cord.

\*      \*      \*      \*      \*      \*      \*

X Q. And the burlap bag itself was not marked?—A. No.

X Q. Except that this tag was tied by a piece of cord to the top of the burlap bag?—A. Not to the top; it was tied into the burlap.

X Q. Into the bag itself?—A. Into the bag, yes.

The pertinent parts of the marking statute of the Tariff Act of 1930 here involved read as follows:

SEC. 304. MARKING OF IMPORTED ARTICLES.

(a) MANNER OF MARKING.—Every article imported into the United States, and its immediate container, and the package in which such article is imported, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place, in such manner as to indicate the country of origin of such article, in accordance with such regulations as the Secretary of the Treasury may prescribe. Such marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. \* \* \*

In the case of *Asiam, Inc.* v. *United States*, Abstract 34636, it was held by this court that cherries imported packed in barrels, having the name of the country of origin of the cherries marked on paper labels attached to the tops and bottoms of the barrels by means of nails were not legally marked because the marking was not "indelible and permanent" within the meaning of the marking provisions above quoted. On appeal, however, the decision of this court was reversed. *Asiam, Inc.* v. *United States*, 25 C. C. P. A. 68, T. D. 49065. The appellate court held that the marking on the labels attached to the barrels was "sufficient reasonably to meet the statutory requirement." The court said:

Obviously, the merchandise itself can not be so marked as to enable the ultimate consumer of the *cherries* to determine the country of origin, but the barrels were so marked, it seems to us, that the consumers of the *barrels* of *cherries* and the public generally, if that be important, could readily see the country of origin, and the labels were specific as to Italy being the country of origin of the cherries.

After the promulgation of the above-cited decision, this court held, in the case of *Monteverde & Parodi, Inc.* v. *United States*, Abstract 36753, that mushrooms packed in immediate containers consisting of linen bags having the name of the country of origin of the mushrooms marked on cardboard tags attached to the top of the bags, were legally marked, on the theory that, under the ruling in the *Asiam, Inc.*, case, *supra*, the marking on the tags attached to the immediate containers was sufficiently permanent to comply with the marking law. On appeal, however, the judgment of this court was reversed. *United States* v. *Monteverde & Parodi, Inc., Parodi Erminio & Co.* C. A. D. 2, 26 C. C. P. A. 112. The court considered that the bags were not marked, inasmuch as the tags were not attached to the bags themselves but were attached to the cords which closed the

mouths of the bags at the top and would necessarily be detached when the bags were opened. The court said:

In the case at bar it is clear that, in order to enable a prospective purchaser of the merchandise to inspect the same, the tag must be first removed with the cord, leaving no indication whatever upon the linen bags respecting the country of origin of their contents. Surely this is not such a marking as the statute requires, regardless of whether the provision of section 304 reading, "Such marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit," applies to containers or not.

The case of *Asiam, Inc.* v. *United States, supra,* relied upon by the trial court, is easily distinguishable from the case at bar. In that case, if either head of the barrel was removed for the inspection of its contents, there would have remained upon the opposite end a marking of the container in compliance with the statute. *If the tags here involved, showing country of origin, had been directly attached to the linen bags, so that the bags could be opened without the removal of the tags, a different question would have been presented, which it is not necessary here to consider.* [Italics ours.]

The case now before the court presents the identical situation which the court described in the part of the above quotation which we have italicized—the question which the court declined to consider. The tags containing the name of the country of origin of the rabbit skins here involved were not attached to cords closing the mouths of the bags, as in the case of *United States* v. *Monteverde & Parodi, Inc., supra,* but were securely tied to the bags themselves through the loops of the burlap. The marking would remain attached to the bags after the bags were opened and the contents removed. The containers of the skins would be in the same relative condition with respect to the marking as the containers of the cherries in the *Asiam, Inc.,* case, *supra.*

We find from the evidence in this case that the tags containing the name of the country of origin of the merchandise were securely attached to the immediate containers thereof, and, under the construction placed upon the provisions of section 304 (a) in the *Asiam, Inc.,* case, *supra,* we hold that the marking was "as nearly indelible and permanent as the nature of the article will permit." In fact, the marking on the tags attached to the bags would probably be more legible than if the marking had been stenciled on the bags, as the bags were second-hand, old, dirty, and some of them stained or greasy from out-running fats of the skins.

It has been held that the purpose of section 304 was to require a marking such as would be understood by purchasers of foreign-made goods as giving definite and reliable information as to the country of origin thereof. Citing *American Burtonizing Co.* v. *United States,* 13 Ct. Cust. Appls. 652, T. D. 41489; *William Camp* v. *United States,* 24 C. C. P. A. 142. T. D. 48623; and *Kraft Phenix Cheese Corp.* v. *United States,* 22 C. C. P. A. 111, T. D. 47103. In the latter case the court said:

It seems quite plain that the Congress was attempting to do no more than to secure a proper marking of the imported article or its container in such a way as would make it manifest to the purchaser that the goods were foreign goods.

The court held in that case that, if either the imported article or the immediate container thereof was legally marked when imported, the provisions of section 304 (b), assessing additional duty at the rate of 10 per centum ad valorem, did not apply.

The excerpt above quoted from the decision in the *Kraft Phenix Cheese Corp.* case, *supra*, is particularly applicable in this case because the importer is both the purchaser and the consumer of the goods and the bags of skins passed no further into the commerce of this country in the condition as imported. The importer processed these skins and manufactured hatters' fur therefrom.

If the marking on the labels attached to the barrels of cherries in the *Asiam, Inc.*, case, *supra*, was "sufficient reasonably to comply with the statutory condition", as stated by the court, surely the marking on the tags attached to the bags of skins in this case would also be sufficient to make it "manifest to the purchasers that the goods were foreign goods", as stated by the court in the *Kraft Phenix Cheese Corp.* case, *supra*, when describing the purpose of the marking provision. We hold that the marking on the tags attached to the bags of skins in this case was sufficient to comply with the statute. The protest is sustained. Judgment will be entered in favor of the plaintiff.